**STRACHMAN v. PALMER et al.**

No. 4418.

United States Court of Appeals
First Circuit.

Oct. 26, 1949.

---

428

Bernard P. Rome, Boston, Mass. (Arthur T. Wasserman and Wasserman & Salter, Boston, Mass., with him on brief), for appellant.

Paul F. Perkins, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, WOODBURY,. Circuit Judge, and CONNOR, District Judge.

CONNOR, District Judge.

Plaintiff filed a complaint in the United States District Court for the District of Massachusetts against Howard S. Palmer, James Lee Loomis and Henry B. Sawyer, Trustees of New York, New Haven and Hartford Railroad Company, the Boston and Maine Railroad, and the Canadian Pacific Railway Company, under the Interstate Commerce Act, Title 49 U.S.C.A. Ch. 1, § 20(11), to recover for damages to live-

stock, alleged to have occurred while said livestock was being transported by rail from Canada to Massachusetts. A trial was had, and evidence was introduced on the question of defendants' liability for the alleged damage, both under said statute and at common law.

The district court assumed jurisdiction of the cause, dismissed on the merits the action as to all defendants on the question of their liability under the statute, adjudging that Title 49 U.S.C.A. Ch. 1, § 20(11), did not apply to the shipment in question, in the transportation of livestock from Canada to Massachusetts. Further holding that it did not have jurisdiction to decide the question of the common law liability of the defendants solely by reason of its jurisdiction to decide the question of the statutory liability, the court dismissed the action as to defendants Boston and Maine Railroad and the trustees of the New York, New Haven and Hartford Railroad. Jurisdiction, however, on the basis of diversity of citizenship, was found over defendant Canadian Pacific, and judgment was awarded the plaintiff in the amount of $150 plus interest against said defendant, by reason of its common law liability for damage occurring to said livestock while being transported over its rails.

The action is here on the plaintiff's appeal from the decision of the district court, he contending that: (1) Title 49, U.S.C.A. § 20(11) applies to the shipment of livestock from Canada to Massachusetts, (2) the U. S. District Court had and should have exercised jurisdiction to determine the entire controversy.

The district court had jurisdiction by virtue of the existence of a substantial federal question. "Jurisdiction is the power to decide a justiciable controversy, and includes questions of law as well as of fact. A complaint, setting forth a substantial claim under a federal statute presents a case within the jurisdiction of the court as a federal court, and this jurisdiction cannot be made to stand or fall upon the way the court may chance to decide an issue as to the legal sufficiency of the facts alleged any more than upon the way it may decide as to the legal sufficiency of the facts proven.

Its decision either way upon either question is predicated upon the existence of jurisdiction, not upon the absence of it. Jurisdiction, as distinguished from merits, is wanting only where the claim set forth in the complaint is so unsubstantial as to be frivolous or, in other words, is plainly without color or merit. * * * In that event the claim of federal right under the statute, is a mere pretence and, in effect, is no claim at all." Binderup v. Pathé Exchange, 263 U.S. 291, 305, 44 S.Ct. 96, 98, 68 L.Ed. 308; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845.

The allegations are not plainly unsubstantial or frivolous, and the complaint "does in fact raise serious questions, both of law and fact, which the district court can decide only after it has assumed jurisdiction over the controversy." Bell v. Hood et al., 327 U.S. 678, 683, 66 S.Ct. 773, 776, 90 L.Ed. 939. In the light of the above holding, the district court assumed jurisdiction and rendered its decision on the merits. The federal claim alleged was clearly not so unsubstantial or frivolous as to present no federal question, and jurisdiction of the cause was properly assumed.

We are in accord with the conclusion of the district court that Section 20(11) of Title 49 U.S.C.A. does not apply to the instant case, a shipment of livestock originating in Canada and carried into Massachusetts, for the reasons given in its opinion, adopting the view expressed in the case of Alwine et al., v. Pennsylvania R. Co., 141 Pa.Super. 558, 15 A.2d 507; Reider v. Thompson, Trustee, Missouri-Pacific R. R. Co., Debtor, 1949, 5 Cir., 176 F.2d 13. The test of applicability is concisely stated by the district court [82 F.Supp. 161, 165]: "Thus, the test of the application of these amendments is two-fold: first, is the carrier's operation such as to bring the carrier within the general coverage of the Interstate Commerce Act; second, is the direction of the movement of the specific shipment in question from a point in the United States to a point either in the United States or in an adjacent country. Plaintiff in the

case at bar meets the first but not the second test."

The further point raised by the plaintiff is whether the district court having recognized and accepted jurisdiction of the cause, based on the existence of a substantial federal question which is decided adversely to the plaintiff, has jurisdiction to determine the question of common law liability.

The U. S. Supreme Court in the case of Hurn v. Oursler, 289 U.S. 238, 243, 245, 247, 53 S.Ct. 586, 588, 77 L.Ed. 1148, restating the rule established in the case of Siler v. Louisville and Nashville R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 53 L.Ed. 753, said: "This court held that the Circuit Court, having acquired jurisdiction by reason of the federal questions involved, 'had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, or even if it omitted to decide them at all, but decided the case on local or state questions only.'" Further: "But the rule does not go so far as to permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action because it is joined in the same complaint with a federal cause of action. The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground;* in the latter it may not do so upon the nonfederal *cause of action.* * * * We do not mean by what has just been said to lay down a hard and fast test by which to determine in all situations what constitutes a cause of action. 'A "cause of action" may mean one thing for one purpose and something different for another,' * * *; but, for the purpose of determining the bounds between state and federal jurisdiction, the meaning should be kept within the limits indicated."

Southern Pacific Co. v. Van Hoosear, 9 Cir., 72 F.2d 903, 911, 912; Treasure Imports, Inc. v. Henry Amdur & Sons, Inc., et al., 2 Cir., 127 F.2d 3, 5; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Moore v. New York Cotton Exchange, 270 U.S. 593, 607-610, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370; Railroad Commission of State of California et al. v. Pacific Gas & Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319; Siler v. Louisville and Nashville R. Co., supra.

■ The plaintiff sought recovery on one cause of action. The effect of the statute was not to establish a new cause of action against the carrier, but to provide a more certain remedy for the shipper. "The effect of the Amendment was therefore not to change the liability of carriers, but to provide a new remedy for shippers. It denied the initial carrier the right to limit its own liability to carriage over its own lines, and it made connecting carriers the agents of the initial carrier. But, as between initial and connecting carriers, it expressly left the loss to fall on the carrier primarily responsible, by subrogating the initial carrier, forced to pay a shipper's claim, to whatever right that shipper had against the defaulting carrier * * *." Acme Fast Freight v. Chicago, M., St. P. & P. R. Co., 2 Cir., 166 F.2d 778, 782; Mexican Light & Power Co. v. Texas Mexican R. Co., 331 U.S. 731, 733, 67 S.Ct. 1440, 91 L.Ed. 1779.

The facts necessary to be established for recovery on either statutory or common law grounds are practically identical and were before the court on both theories. The record indicates that, by the implied consent of the parties, testimony was received and arguments made, not only on the issue whether the plaintiff could recover under the Interstate Commerce Act, but also on the issue whether he could recover at common law if the Act was inapplicable.

■ Applying the test established in Hurn v. Oursler, supra, we conclude that the plaintiff alleged one cause of action for negligent damage to his livestock in course of shipment, seeking to recover by either of two remedies apparently available to

him, statutory or common law, and the case is one wherein the district court "had the right to decide all the questions in the case, even though it decided the Federal questions adversely to the party raising them, * * *." Siler v. Louisville and Nashville R. Co., supra [213 U.S. 175, 29 S.Ct. 455]. In the light of this rule and on the state of the record, we are of the view that judicial economy and convenience of the parties would be best served and piecemeal litigation avoided in the disposal of the non-federal question.

The judgment of the district court is vacated as to the Boston and Maine Railroad and the trustees of the New York, New Haven and Hartford Railroad Company, and the case is remanded for further proceedings not inconsistent with this opinion; the appellant recovers costs in this court.

MAGRUDER, Chief Judge (concurring).

When federal jurisdiction has been invoked by a complaint setting forth a claim under the Constitution or laws of the United States, the extent of the accessory or pendent jurisdiction of the federal court to determine questions of state law has been a matter of some perplexity. See Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393, 397 et seq. (1936); Note, 52 Yale L.J. 922 (1943). Such pendent jurisdiction, where it exists, must be traced back to the Constitution. Under Article III, Section 2, the judicial power of the United States extends "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *." The federal judicial power thus extends to the decision of the "whole case", not merely "to those parts of cases only which present the particular question involving the construction of the constitution or the law", as Marshall, C. J., pointed out in Osborn v. President, etc., of Bank of United States, 1824, 9 Wheat. 738, 822, 6 L.Ed. 204. Presumably, considerations of convenience and economy of judicial administration prompted this extensive grant of federal judicial power. At any rate, as Chief Justice Marshall further stated in the case just cited, 9 Wheat. at page 823, 6 L.Ed. 204, "when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or of law may be involved in it."

The statutory grant of judicial power to the federal district courts is phrased in correspondingly broad terms. Under 28 U.S.C.A. § 1331, the district courts are given "original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States." In the latest revision, the phrase "civil actions" was substituted for the earlier version, "all suits of a civil nature, at common law or in equity", 28 U.S.C.A. § 41(1), to conform to Rule 2 of the Federal Rules of Civil Procedure, 28 U.S.C.A., but the meaning is the same. Jurisdiction extends to the whole "case" or "suit" or "civil action" when a federal question "forms an ingredient of the original cause". Difficulties have arisen as to what is to be deemed a part or ingredient of a single "case" or "cause of action"; and the Second Circuit, particularly, has wrestled with this problem in a number of cases. See, for instance, Treasure Imports, Inc. v. Henry Amdur & Sons, Inc., 1942, 127 F.2d 3; Musher Foundation, Inc. v. Alba Trading Co., Inc., 1942, 127 F.2d 9; Zalkind v. Scheinman, 1943, 139 F.2d 895. The refinements need not concern us in the case at bar, for the existence of pendent or accessory jurisdiction here is clearly indicated by the rule formulated in Hurn v. Oursler, 1933, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, however unclear that rule may be as applied to other situations. Complainant's "case" or "cause of action" against defendant carriers is for loss or damage to cows in the course of shipment. Liability is asserted under an Act of Congress; but if this ground fails on the merits (as I think it does), there is an alternative common law ground of recovery against each carrier for so much of the damage as occurred

through its negligence during the transportation over its own lines.

The recent revision of the Judicial Code, 28 U.S.C.A. § 1338(b), provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent or trade-mark laws." According to the Reviser's Notes, this subsection was designed to give explicit statutory authority for the rule in Hurn v. Oursler, supra, a case which happened to involve claims of copyright infringement and unfair competition. But the enactment of this § 1338(b) hardly warrants the inference that Congress intended that the pendent jurisdiction of the federal courts, as enunciated in Hurn v. Oursler, is to be confined to the special classes of cases enumerated in the subsection. That the decision in Hurn v. Oursler was not so limited is apparent from the Court's reliance upon Siler v. Louisville and Nashville R. Co., 1909, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753, and Moore v. New York Cotton Exchange, 1926, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750, 45 A.L.R. 1370. And as I have indicated above, this pendent jurisdiction in generalized form, not limited to any particular class of cases, is derived from Article III, Section 2, of the Constitution and 28 U.S.C.A. § 1331.

For the federal court to obtain jurisdiction of the "whole case" it is necessary that the federal claim be a "substantial" one, not one so frivolous as to be plainly without color of merit, "and, in effect, no claim at all." So the Supreme Court has said in numerous cases, Moore v. New York Cotton Exchange, supra, 270 U.S. at pages 608-609, 46 S.Ct. at page 370; Levering & Garrigues Co. v. Morrin, 1933, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062; Hurn v. Oursler, supra, 289 U.S. 238, at page 246, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 324, 59 S.Ct. 191, 83 L.Ed. 195; Bell v. Hood, 327 U.S. 678, 682, 683, 66 S.Ct. 773, 90 L.Ed. 939. This requirement is not without its theoretical difficulties. Thus, in Levering & Garrigues Co. v. Morrin, supra, the plaintiffs sued for an

injunction against a labor boycott which was alleged to be a violation of the anti-trust laws and also a common law tort. The Supreme Court held that the district court did not have incidental or pendent jurisdiction to decide the asserted common law ground of liability, because the federal question averred was deemed to be "plainly unsubstantial." The Court reached this conclusion because the unsoundness of the federal claim under the anti-trust acts "so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." 289 U.S. at page 105, 53 S.Ct. at page 550. But a judgment of the Supreme Court is not res judicata as against persons not parties or privies to the earlier litigation; and the Supreme Court has been known to overrule its previous decisions. Persons not concluded by the earlier judgment are entitled to litigate the question anew; so it is difficult to understand why the federal district courts should be deemed to lack "jurisdiction" in such a case, even though the lower courts may be bound to adjudicate adversely to the federal claim in deference to controlling authority not yet overruled by the Supreme Court.

However that may be, in the instant case the claim against the carriers based on the federal statute has not been rejected in any prior Supreme Court decision, and has commended itself to at least one lower court, whose decision Judge Wyzanski in the case at bar refused to follow, I believe correctly. Though it may seem to us, after some study of the statute, that the claim is pretty clearly unfounded under the plain statutory language, yet in view of the discussion in Bell v. Hood, supra, I agree with the district court that the federal claim in the present case has sufficient substance to give the federal court jurisdiction to determine it on the merits.

A federal claim may be deemed "substantial" enough to give the federal court jurisdiction of the whole case even though the court eventually concludes that the federal ground on the face of the complaint is insufficient in law. In Levering & Garri-

gues Co. v. Morrin, supra, 289 U.S. at page 105, 53 S.Ct. at page 550, the Court said: "The question of jurisdiction as thus limited is to be determined by the allegations of the bill, and not upon the facts as they may turn out, or by a decision of the merits. Mosher v. Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148, and cases cited." Thus, in Moore v. New York Cotton Exchange, supra, the plaintiff's bill for an injunction was founded on a claim that a contract between the New York Cotton Exchange and the Western Union Telegraph Company was an illegal restraint of trade and commerce under the federal anti-trust acts. Defendants' answer set up certain defenses, and also pleaded under Equity Rule 30 a counterclaim "arising out of the transaction which is the subject matter of the suit". Plaintiff's bill was dismissed on the merits, but the court retained jurisdiction over the counterclaim and granted injunctive relief to the defendants thereon. This action of the lower court was affirmed, though the Supreme Court was of opinion, 270 U.S. at page 603, 46 S.Ct. at page 369, "that upon the allegations of the bill no case is made under the federal anti-trust laws", and though the claim set forth in the counterclaim afforded no independent basis of federal jurisdiction. In other words, federal jurisdiction having been invoked by a bill setting forth a federal claim which, though insufficient in law, was nevertheless not "so unsubstantial as to be frivolous", [263 U.S. 291, 306, 44 S.Ct. 98] the federal court obtained jurisdiction of the whole case, including power to give relief on a counterclaim arising out of the same transaction. It was deemed appropriate in the particular case to exercise this incidental power under the familiar principle that a court of equity, once invested with jurisdiction of the case or controversy, will, if possible, afford complete relief and settle the controversy between the parties in all its aspects.

Therefore, I believe the court below was not lacking in "jurisdiction" to determine on the merits both the federal claim and the alternative common law ground of liability. But a distinction should be drawn in this connection between the existence of jurisdiction and the propriety of its exercise in a particular case. Federal courts should not be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation merely because they have "jurisdiction" to do so by virtue of a complaint making an unfounded claim of federal right. In Hurn v. Oursler, supra, there was a persuasive practical reason for the exercise of such pendent jurisdiction, for in that case the district court, in order to dispose of the federal claim of copyright infringement, was required to take the entire evidence necessary to resolve the almost parallel non-federal claim of unfair competition, and it would obviously serve everyone's convenience for the court to adjudicate the whole case, both in its federal and non-federal aspects. But in the present case it was not necessary to go to trial to dispose of the federal claim on its merits. That claim could have been disposed of as a matter of law upon motion to dismiss. If such motion had been made, I am not prepared to say that the district court would have been in error in dismissing the whole case. The dismissal would have been on the merits as to the federal claim. In strictness, the dismissal of the complaint, in so far as the alternative common law ground was concerned, would not have been for lack of jurisdiction, but it would have been without prejudice, like a dismissal on the ground of forum non conveniens. However, the defendants did not move to dismiss, and as the district court pointed out, by the implied consent of the parties [82 F.Supp. 165] "testimony was received and arguments were made not only on the issue whether plaintiff could recover under the Interstate Commerce Act but also on the issue whether he could recover at common law if the Act did not apply." Under these circumstances, defendants are now hardly in a position to urge that the complaint should have been dismissed in its entirety, without adjudication of the non-federal issues. Since the district court had "jurisdiction" to dispose finally of the whole case I think it should have done so, in view of the fact that it was led to try the case in its entirety because of the failure of de-

fendants to interpose a timely motion to dismiss. Every consideration of common sense, convenience and economy points to this conclusion. This is especially true here, since the disposition of the common law issues would not seem to present any doubtful or difficult question of state law but depends upon factual determinations as to where and how the cows were damaged in the course of shipment and whose fault it was.